THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN F. SCHUENEMAN, Plaintiff in Error.

*Opinion filed February 18, 1926.*

1. CRIMINAL LAW—*petition for change of venue must be incorporated in bill of exceptions.* A petition for a change of venue and affidavits in support thereof, although copied into the transcript, cannot be considered on review unless made a part of the record by being incorporated in the bill of exceptions.

2. SAME—*what evidence cannot be admitted in defense of embezzlement.* In a prosecution for embezzlement of the funds of a corporation, evidence tending to show that the president of the corporation conspired with the defendant to misappropriate the funds for illegal purposes is not admissible, as it constitutes no defense to the charge of taking the funds of the corporation itself.

3. SAME—*when counsel cannot object to remarks of the court.* Counsel for the defendant cannot object that improper remarks were made by the court where the remarks objected to were caused by the persistent and repeated efforts of counsel to get before the jury evidence which the court had ruled as improper and where the court gave no intimation of its opinion on the proper evidence in the case.

4. SAME—*when evidence of another offense is improper in embezzlement.* In a prosecution for embezzlement, evidence of the defendant's connection with another embezzlement in no way connected with the crime charged is improper.

5. SAME—*record need not always be free from error.* The object of the review of judgments of trial courts is not to determine whether the record is free from error, but is to ascertain whether a just conclusion has been reached, founded upon competent and sufficient evidence, after a trial in which no error has occurred which might be prejudicial to the defendant's rights.

6. SAME—*when defendant cannot complain of error in trial.* A defendant who is fully proved guilty by his own confession has no right to complain of error in the trial where the verdict of guilty has nothing to do with the fixing of the penalty or the grade of the crime.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM N. GEMMILL, Judge, presiding.

LEO A. O'REILLY, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and MERRILL F. WEHMHOFF, (EDWARD E. WILSON, and CLARENCE E. NELSON, of counsel,) for the People.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

John F. Schueneman was convicted in the criminal court of Cook county upon an indictment in three counts, charging him with larceny, embezzlement and larceny as bailee of $10,000, the property of O. D. Jennings & Co., a corporation. He was sentenced to imprisonment in the penitentiary for an indeterminate period and has sued out a writ of error to review the record.

The first error relied upon for reversal is the denial of a change of venue on account of the prejudice of the trial judge. A petition for a change of venue, and two affidavits in support of it, have been copied in the common law record. The only reference in the bill of exceptions to a change of venue, as shown by the abstract, is in these words: "Proceedings had on June 19, 1925, with reference to change of venue. * * * Renewal of motion on June 30, 1925, of motion for change of venue." The petition and affidavits are not a part of the record. They can be made so only by a bill of exceptions, and unless this is done they cannot be considered although copied in the transcript. *Bedee* v. *People,* 73 Ill. 320; *McElwee* v. *People,* 77 id. 493; *People* v. *Weston,* 236 id. 104; *People* v. *Sperling,* 288 id. 574.

The plaintiff in error was employed in May, 1921, as book-keeper for O. D. Jennings & Co., a partnership, which was afterward incorporated in May, 1923, and he remained in the employment of the corporation until August 15, 1924.

One of his duties was to deposit the funds of the corporation to its credit in the bank. Frank L. Thompson, a public accountant, who had been employed by the partnership in 1918 and periodically thereafter to make its Federal income tax returns, was employed in November, 1924, to make a general audit of the books from the organization of the corporation, May 16, 1923, to August 15, 1924, when the employment of the plaintiff in error ceased. Thompson testified that during that period $4713 more was received by the corporation than was placed to its credit in the bank. The different items went through the hands of the plaintiff in error, and the audit was based on cash receipts records, deposit slips, the general ledger, accounts receivable ledger, and other books and papers. The plaintiff in error was arrested on December 9, 1924.

Alfred H. Schuetz, a police officer, testified that about noon on December 9 he interviewed the plaintiff in error at the Rogers Park police station in the presence of officer Fuerst and Mr. Dinkelman, asking him if he had ever taken any money, besides his salary, belonging to O. D. Jennings & Co., and he answered that he had. The officer then asked him if he would go to the office of the company, and he said he would. When they reached the office Thompson was there, and he, Dinkelman and Schuetz went with Schueneman into the private office, where they remained from one to four o'clock, and the other three questioned Schueneman. Then Schuetz took Schueneman to the East Chicago police station and locked him up. The next day, at the police station, Schuetz questioned Schueneman, the questions and Schueneman's answers were taken down by the office stenographer and Schueneman signed the statement. He was asked and told about particular amounts which he had taken during his employment by the corporation. The particular items mentioned in the statement amounted to $1894 taken from O. D. Jennings & Co. after

320—9

the incorporation. At the conclusion of the questions as to particular items Schueneman was asked, "How much money, to the best of your knowledge, did you steal from O. D. Jennings & Co.?" to which he answered, "Approximately $10,000." He further stated that he used the money for gambling and had none of it left.

The plaintiff in error testified and admitted the deficits, but denied that he had stolen the money or had told anyone that he had stolen it. He did not deny that he got or received the money but expressly admitted that he did get some of the items, and said he did not steal it. He testified that after the stenographer had written the statement which he signed he was given a typewritten copy to sign, and he signed it but did not read it.

The plaintiff in error's attorney asked him whether he received any money from O. D. Jennings & Co., either while it was a partnership or while it was a corporation, outside of his salary, to which the court sustained an objection. The plaintiff in error testified that he deposited $2622.54 in the West Madison State Bank on May 10, 1924, and that he received on that day $2822.54; that nobody else handled the money that day and that he got the $200. His attorney asked him, "Did anybody instruct you to take that $200?" and the court sustained an objection to the question. His attorney then stated that he had to make his offer of proof; that the mere fact that a man takes $200 is no proof of crime, and he asked the plaintiff in error, "Did Mr. O. D. Jennings ever tell you to take any money from O. D. Jennings & Co.?" An objection was made, which the court sustained, saying, "I have discussed this whole matter with you in chambers this forenoon. I told you that none of that testimony which you state you propose to offer was admissible in evidence in any circumstances whatever." The attorney persisted in repeated attempts to get the matter to which objection had been sustained before the jury, but the court would not permit him to ask questions having that

purpose or to make his offer in the presence of the jury, and finally the plaintiff in error's attorney stated that he would like to make his offer in chambers before he closed his case, which the court permitted him to do in the following statement:

"I propose to show that Mr. O. D. Jennings had Mr. Schueneman make out a check in June, 1921, for the sum of $500, payable to Hayden Bell, and that Mr. Schueneman made out the check and that it was given to Hayden Bell, and a few weeks thereafter Mr. O. D. Jennings took Mr. Schueneman into his private office and explained to Mr. Schueneman that the $500 check was given to Mr. Bell for the purpose of Mr. Bell to give the $500 check to some congressman in Washington to keep pigeonholed a certain bill which was up before Congress prohibiting the use of mail for the purpose of circularizing gambling devices and other machines of like nature which were being manufactured and which O. D. Jennings & Co. were manufacturing, and that Mr. O. D. Jennings at that time told Mr. Schueneman that he was to receive money from the company—that is, that he (Schueneman) was to receive money from the company for the purpose of keeping this transaction quiet; and also that Mr. Jennings wanted Mr. Schueneman to cut down on the inventories so that they would reduce the income taxes to be paid by the corporation, and that for such services he told Mr. Schueneman that he should take and receive certain moneys out of the business for doing that; and also that Mr. O. D. Jennings told Mr. Schueneman to write out bonus checks to certain individuals of the corporation and to charge them to services, so that they would reduce the income tax to be paid by increasing the expenses, and that after these individuals had received the bonus checks they would return part of that bonus money back to Mr. O. D. Jennings personally, and that he was to retain same. In one specific instance a bonus check of $4000 was given to Mr. Thompson, and

Mr. Thompson returned $3000 out of that $4000 to Mr. Jennings; and that happened with several employees known to Mr. Schueneman, under the instructions of O. D. Jennings. I also intend to prove that the money which Mr. Schueneman took from O. D. Jennings & Co. was by the order and direction of Mr. O. D. Jennings, and that he took said money by virtue of these different transactions, in return for doing the work which Mr. Jennings had directed him to do."

It is argued that the court erred in refusing to permit the plaintiff in error to testify to the facts offered to be proved; that where the owner of property voluntarily parts with its possession there can be no larceny, and that it is not sufficient to show the conversion of property but it must be shown that it was voluntarily converted with a criminal intent, and the mere evidence of having the property in the defendant's possession does not show any criminal intent. These are correct propositions of law but they are not applicable to the facts proposed to be shown. The ownership of the property was alleged to be in O. D. Jennings & Co., a corporation. O. D. Jennings was not the corporation but only president and general manager. He had no more right to misappropriate and convert to an unlawful use the property of the corporation than the plaintiff in error, and he could not confer any such right on the plaintiff in error. The facts proposed to be proved constituted a conspiracy between Jennings and the plaintiff in error to take the money of the corporation for the purpose of bribing a congressman, defrauding the government, and defrauding the corporation itself by the issue of checks to employees for money, a part of which was to be returned to Jennings personally, for his own use. The proof that the money of O. D. Jennings & Co. was taken for such purposes by the order and direction of the president of the company would have constituted no defense for the plaintiff in error. It was not error to refuse to admit this testimony.

It is insisted that remarks of the court in the progress of the trial were prejudicial to the defendant. The remarks which are complained of in the argument were made in connection with the persistent efforts of counsel for the plaintiff in error to get before the jury the facts indicated by the offer of proof which he made and in regard to which the court said he had discussed the whole matter with counsel in chambers and told him that none of that testimony which he proposed to offer was admissible in evidence and that they were not going into that at all. The court said, as various questions intended to evade his rulings were asked and objected to, "If you repeat it after I have warned you,—and I have warned you several times,—if you repeat it there will be rather severe consequences." Again: "As I understand, this man was hired a long time before any of this trouble arose, when it was a partnership, and he has already testified that Mr. Jennings hired him as book-keeper and cashier. He so testified. The objection, therefore, is sustained." Again: "I don't care whether you object or not. You listen to me. You know how to make your record and I have told you how to make your record. I am not going to have you play here before this jury." The court finally thought it necessary to make a statement to the jury in connection with the efforts of counsel to evade the decision of the court as to the admissibility of this evidence, in the course of which he stated in regard to the offered evidence as to the acts of the president of the company, that "the only possible bearing it could have would be that Mr. Jennings would be a criminal along with this man." Counsel for the defendant excepted to the statement to the jury and made a motion to have the remarks stricken from the record, which the court denied. Counsel proceeded to argue the matter, but the court stated that they were through with that subject and requested counsel to proceed. Counsel asked, "Can't I say anything for the record?" and the court stating, "You can't go any further; I

have ruled on your proposition that you have made here," counsel then stated, "You are precluding me from making my record and you are going to give the jury a wrong impression," to which the court responded: "Don't you suggest a thing of that sort again here. I am here to try this case according to the practice of law. We are not here to jockey and we are not going to jockey." Counsel asked the plaintiff in error at another time, with reference to making the inventories of O. D. Jennings & Co., "State, if you know, who made them up?" The court said: "Wait a minute. The making up of the inventories of O. D. Jennings & Co. with reference to income tax of that company has nothing to do whatever with this case. It is as far as the sun is from the moon in this case. It hasn't anything on earth to do with it." All these remarks were made by the judge in connection with the persistent and repeated efforts of counsel to get before the jury, by question and innuendo, the facts which the court, by his ruling on the admissibility of the evidence offered, had held constituted no defense, and were caused by the improper conduct of counsel in refusing to observe the decision of the court and in seeking by evasion of it to avoid its effect.

Counsel call attention to the statement of the court in the case of *People* v. *Lurie,* 276 Ill. 630, that it is an abuse of discretion for a trial judge to intimate any opinion as to the credibility of a witness or to convey to the jury his opinion of the evidence in the case. There was no question in this case of the credibility of a witness or of the weight of evidence. The court held that the evidence was not admissible. What the court said to the jury could, therefore, have no effect on the credit or weight of the evidence. Counsel also said in his argument that there is no way to preserve in the record the attitude and tones of the voice of the judge which are deemed prejudicial except to record his language, and in this case the language can

only give a faint suggestion of the attitude and tones of the judge. What was said gave no intimation as to the opinion of the judge on the evidence in the case and concerned only the offered evidence, which was not in the case. The language indicated some displeasure with the counsel's persistent disregard of the court's decision, but if there was any impatience in the judge's attitude or the tones of his voice counsel brought it on himself by his improper conduct.

The court erred in permitting the State's attorney to cross-examine the plaintiff in error with reference to an embezzlement in New Orleans and to introduce in rebuttal evidence in regard to the defendant's connection with that embezzlement. (*Kribs* v. *People,* 82 Ill. 425; *People* v. *Paisley,* 288 id. 310.) The plaintiff in error contends that the court also erred in an instruction given to the jury, and the defendant in error concedes that the instruction was erroneous. Neither ruling, however, was prejudicial to the plaintiff in error. The defendant on his own statement was guilty and there was no evidence tending to raise any doubt of his guilt. The object of the review of judgments of trial courts is not to determine whether the record is free from error, but is to ascertain whether a just conclusion has been reached, founded upon competent and sufficient evidence, after a trial in which no error has occurred which might be prejudicial to the defendant's rights. A defendant who is fully proved guilty by his own confession has no right to complain of error in the trial where the verdict of guilty has nothing to do with the fixing of the penalty or the grade of the crime. *People* v. *Stover,* 317 Ill. 191.

The judgment is affirmed.     *Judgment affirmed.*