(No. 18917.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM TRIOLO, Plaintiff in Error.

*Opinion filed October 25, 1928—Rehearing denied Dec. 11, 1928.*

Nuncio Bonelli, Helen Cirese, and Charles P. R. Macaulay, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, Robert E. Crowe, State's Attorney, and Roy D. Johnson, (Henry T. Chace, Jr., and Edward E. Wilson, of counsel,) for the People.

Mr. Justice Heard delivered the opinion of the court:

Plaintiff in error, Sam Triolo, was in the criminal court of Cook county indicted, tried, convicted and sentenced to life imprisonment in the Joliet penitentiary for the murder of William Gearty, and he has brought the record to this court for review upon writ of error.

The evidence was not set out in detail in the bill of exceptions, but it is stated therein that the evidence introduced on the trial of the cause was conflicting and might have warranted the jury in finding the defendant guilty of murder or manslaughter or not guilty; that the People, to maintain the issues on their part, introduced evidence tending to prove that on April 27, 1926, the defendant was employed by James D. Corcoran, a plastering contractor, to perform certain labor in the construction of the Farnsworth public school building, near Mason and Milwaukee avenues, in Chicago; that about three weeks thereafter the defend-

ant in said building made an unprovoked assault upon William Gearty, another employee of Corcoran; that after an exchange of several blows the defendant and Gearty were separated by fellow-workmen; that shortly thereafter the defendant was discharged by Corcoran's foreman, and the defendant believed that he was so discharged at the instigation of Gearty; that on June 2, 1926, at about seven o'clock in the morning, the defendant returned to said building for the purpose of revenging himself on Gearty for the former difficulty; that Gearty entered the building and was walking up a stairway when the defendant, unperceived by Gearty, picked up the handle of a broken shovel which was lying on the ground there and struck Gearty a violent blow from behind therewith; that Gearty turned to face the defendant, whereupon the defendant struck him several blows with the handle; that Gearty seized the handle and endeavored to take it away from the defendant, whereupon the defendant drew a revolver and discharged it repeatedly at Gearty, inflicting mortal wounds, of which Gearty died the next day; that when Gearty entered the building, before being assaulted by the defendant, the defendant had concealed himself near where Gearty would have to pass, and that after the shooting the defendant did not return to his home but became a fugitive; that immediately after the shooting the defendant told his son that he had killed a man and in the presence of his son hid a revolver and cartridges in the basement of his house, which revolver and cartridges were produced on the trial, and the revolver was identified by witnesses for the prosecution who were eye-witnesses to the shooting, as similar in appearance to the revolver used in the shooting.

The defendant, to maintain the issues on his part, introduced evidence tending to prove that in the altercation which occurred between him and Gearty about three weeks after he entered the employment of Corcoran he was assaulted by Gearty without any provocation on his part and

was knocked down, kicked and severely injured by Gearty; that Gearty threatened that he would eventually kill him; that shortly thereafter the defendant was discharged by Corcoran's foreman; that no reason was given to him for his discharge; that on the morning of June 2, 1926, the defendant returned to the building solely for the purpose of asking to be again given employment; that while waiting for an opportunity to speak to the foreman, who had not arrived, several of the workmen entered the building, among whom was Gearty; that Gearty, on seeing the defendant there, attacked him without any provocation and struck him violent blows with his fist, knocking him down; that the defendant picked up the handle of a broken shovel that lay on the ground and struck Gearty therewith; that Gearty wrested the shovel handle from him and produced a revolver from his pocket and declared that he would kill the defendant; that he grappled with Gearty and contrived to get his finger on the trigger of the revolver which Gearty held in his hand and caused it to be discharged repeatedly into the body of Gearty; that Gearty then released the defendant and the defendant left the building.

The only evidence of this version of the shooting was the testimony of the defendant, who testified as a witness on his own behalf. He testified that the revolver introduced in evidence by the State was one which he had owned for a considerable time and that it was not the revolver with which Gearty was shot but that Gearty had been shot with his own revolver. The defendant also introduced evidence tending to prove that at the time of the homicide he had a good general reputation for peace and quiet and as a law-abiding citizen.

The only assignment of error argued by plaintiff in error in his brief is the giving of two instructions on the subject of self-defense. The first of these is as follows:

"The court instructs the jury that the law of self-defense does not imply the right of attack in the first instance, nor

does it permit of action done in retaliation or for revenge. Therefore, if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant sought or brought on a difficulty with the deceased at the time of the shooting, or if you believe from the evidence, beyond a reasonable doubt, that he shot and killed at a time when he had no reasonable cause to apprehend the approach of immediate injuries to himself, and did so from a spirit of utter disregard of human life, or from a motive of revenge or retaliation, then the defendant cannot avail himself of the law of self-defense and you cannot acquit on that ground."

Plaintiff in error argues that the effect of this instruction was to prevent the possibility of his being acquitted or found guilty of manslaughter, and cites *Adams* v. *People,* 47 Ill. 376, and *Kinney* v. *People,* 108·id. 519, to the effect that if the defendant sought a difficulty with the deceased amounting to a breach of the peace, without intending to kill the deceased when the difficulty began, he could avail himself of the law of self-defense to the extent of reducing the homicide to manslaughter. This instruction does not conflict with that rule, as it does not direct a verdict of guilty of murder but only tells the jury that under the circumstances stated in the instruction they could not acquit the defendant.

Plaintiff in error also contends that if the defendant brought on the difficulty by a lawful act not calculated to provoke an affray he could avail himself of the right of self-defense to the extent of an acquittal, and cites *Fouch* v. *State,* 95 Tenn. 711. The jury could not have been misled in this regard, as there was no evidence that the defendant brought on the difficulty by a lawful act not calculated to provoke an affray, as all the evidence which tended to show that the defendant brought on the difficulty tended to show that he brought it on by an unlawful act calculated to provoke an affray.

The other instruction complained of was as follows:

"The court instructs the jury, as a matter of law that a defendant charged with murder cannot avail himself of the claim of necessary self-defense, if the necessity for self-defense was brought on by his own deliberate and wrongful act."

The only self-defense recognized by the statute as a defense against a homicide is one where the killing of the deceased was absolutely necessary to save the life of the killer or to prevent his receiving great bodily harm. The term "necessary self-defense," however, should not be used in an instruction without defining it, and in a homicide prosecution it has been held that an instruction as to self-defense which is simply a copy of section 149 of the Criminal Code does not give to the jury any accurate knowledge of the law of self-defense and should not be given. (*Steiner* v. *People,* 187 Ill. 244; *Gainey* v. *People,* 97 id. 270; *Campbell* v. *People,* 16 id. 17.) In this case, however, the jury could not have been misled as to the meaning of the term, as the court at the instance of plaintiff in error gave the jury five instructions on the subject, which fully defined the circumstances under which the defense is available.

The instructions, as a whole, stated the law of self-defense most favorably to the defendant, as they allowed this defense to be utilized to the extent of permitting a verdict of not guilty without any reference to the question as to who was the first assailant.

Finding no reversible error in the record, the judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*