(No. 27605.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CLEO GIBSON, Plaintiff in Error.

*Opinion filed January 20, 1944.*

Ellis & Westbrooks, and Joseph J. Attwell, Jr., (Richard E. Westbrooks, of counsel,) all of Chicago, for plaintiff in error.

George F. Barrett, Attorney General, and Thomas J. Courtney, State's Attorney, of Chicago, (Edward E. Wilson, John T. Gallagher, Melvin S. Rembe, and Joseph A. Pope, all of Chicago, of counsel,) for the People.

Mr. Justice Thompson delivered the opinion of the court:

Upon a jury trial in the criminal court of Cook county, the defendant, Cleo Gibson, was found guilty of the murder of Missouria Perkins, otherwise called Missouri Perkins, and her punishment fixed at imprisonment in the penitentiary for twenty years. Her motion for a new trial was overruled and judgment entered on the verdict. Defendant now seeks a reversal, claiming the evidence was not sufficient to establish her guilt beyond a reasonable doubt and that prejudicial error was committed by the trial court in the giving of certain instructions and in the rulings upon evidence.

Accused and deceased were negro women and had been friends and associates for a number of years. The killing occurred between three and four o'clock on the morning

of May 15, 1941, in the apartment occupied by deceased and Juanita Jones at 4615 Michigan avenue, in Chicago. Earlier in the night deceased had been at a tavern and about two o'clock on that morning, accompanied by her friends, Richard Tapley and Blanche Taylor, returned to her apartment. After they had been there a while, Juanita Jones and the defendant also came in, and in about five minutes after their arrival Blanche Taylor departed. There was drinking and conversation, and deceased, becoming angry at defendant, hit her on the head with a small wooden baseball bat, about twelve inches in length. The blow inflicted a flesh wound which bled profusely. Tapley went to her assistance, gave her a towel, and went with her to the bathroom, which was a distance of some twenty feet down the hall from the apartment. At her request he returned to the apartment for some salt to stop the flow of blood, took the salt from a shelf, gave it to the defendant in the bathroom, and then left the building. When he left the apartment after obtaining the salt, deceased shut and locked the door after him. At that time defendant was in the bathroom, and deceased and Juanita Jones were alone in the apartment. Juanita Jones, who was called as a witness by the court and cross-examined by both sides, testified that defendant banged on the door for about three minutes, saying, "Open that door. Give me my purse, chubby and hat;" that deceased told her not to open the door, but that she did so and ran out because she was afraid she might get hurt as the room was so small; that deceased went to the front porch opening off the apartment and yelled for the police; and that when witness opened the door she ran out at once before the defendant came in. She testified, "I wasn't taking time to give her her coat and purse. I was getting out." She fled from the room to the end of the hall and stood there until defendant passed her going down the stairs a few minutes later, after which she returned to the room where she

found deceased lying on the bed, covered with blood. Deceased was then living, but died before the police officer arrived at 3:30 A. M. Her death was caused by multiple stab wounds.

Edna Shaw, who lived in room 19, adjoining room 20, which was the apartment of the deceased, testified that she was awakened about three o'clock in the morning, that deceased called to her about three. times, and that witness then went downstairs and asked the landlady to call the police. She testified that as she went through the hall she saw defendant banging on the door of room 20 with a garbage-can lid and heard her say, "Open that door and give me my purse." She testified that she heard nothing further, but admitted that at the coroner's inquest she had testified she heard the defendant threaten to break the door down.

Della Julian, who lived in another apartment which also adjoined that of deceased, testified she was awakened by someone pounding on the door, that she heard and recognized defendant's voice, and heard deceased say, "Don't you answer that door, I'm going out of here and call 19 and tell her to call Mrs. Holland to call the police;" that witness heard the door to deceased's apartment open and heard the defendant rush in saying, "Come on here, bitch, I am going to kill you."

Lucy Holland, the landlady, testified that while in her room on the first floor she heard someone banging on a door on the third floor with what sounded like a garbage-can lid, and heard the defendant threaten to break in the door.

Defendant testified that while she was in the bathroom she asked Richard Tapley to go back to the room and get her things, but he left without doing so; that she then went to the room, knocked on the door and said, "Missouri, give me my coat and hat;" that deceased replied, "I'm not going to give you nothing;" that defendant said, "Juanita,

give me my things," and Juanita said, "I haven't got anything to do with it;" that she knocked again and said, "Juanita, please give me my pocket-book if you won't give me my things, because I am about to bleed to death;" that then the door opened and Juanita ran out, and she, (the defendant,) went in to get her coat and pocketbook. Defendant further testified that deceased then started beating her with the same club and in the fight the deceased grabbed a knife and told her she would kill her; that they fought around the room, and that as soon as she could get away from deceased, she grabbed her coat and ran out.

Defendant contends that the court erred in giving People's instructions 10, 16, 17, 18, and 20. Instruction 10 defined murder and express and implied malice in the words of the statute. Objection is made to it on the ground that it is inapplicable and ignores the plea of self-defense. *People* v. *Clark,* 368 Ill. 183, and *People* v. *Dascola,* 322 Ill. 473, are cited in support of this contention. It is true this instruction, in the cases cited by defendant, was criticised and condemned as ignoring the right of self-defense. It was stated in those cases that instructions defining murder and malice should never be given without calling attention to the element of self-defense where it is involved in the case, because liable to be misleading. In this case other instructions given, both for the People and the defendant, fully covered the subject of self-defense. Instruction No. 10 did not direct a verdict. It simply consisted of the definition of the crime of murder and the definition of the malice which constitutes one of the elements of the crime. The instructions given in a case are to be read and considered as a series. A particular instruction need not contain all the law either of the case or upon a given subject. It is sufficient if the instructions, considered as a whole, fully and fairly announce the law applicable to the theories of the People and of the defendant, respectively. (*People* v. *DeRosa,* 378 Ill. 557.) When

instruction 10 is considered with reference to other instructions given on the subject of self-defense, it neither ignores nor nullfies this theory. It was held in *People* v. *Grady,* 381 Ill. 224, and in *People* v. *Andrews,* 327 Ill. 162, that an instruction defining murder and malice is not erroneous as ignoring the element of self-defense where other instructions are given covering that subject. The jury could not have been misled by this instruction.

Objection is made to People's instruction No. 16. Defendant claims this instruction assumes she had admitted causing the death of deceased, and says there is a difference between admitting that she stabbed her and admitting that she stabbed her to death. There is, however, in this case no possible doubt as to the cause of the death of Missouri Perkins. That defendant stabbed and fatally wounded her is not questioned. The only question presented to the jury was the claim of self-defense. The case of *People* v. *Biella,* 374 Ill. 87, cited by defendant, is not applicable here. There the deceased died five days after his fight with the defendant and one of the controverted questions in the case was whether the injuries received in the fight were the cause of his death. There was no evidence as to what serious wounds, if any, he sustained during the fight or as to his physical condition immediately thereafter, the only evidence bearing on his condition being that he went back to his room after the fight, locked the door, and opened it two hours later, without assistance, to admit a friend. Here the deceased, as soon as the affray was over, was found lying on the bed in a pool of blood and died in a very few minutes thereafter. Defendant also claims that this instruction is erroneous because of the use of the term "justifiable self-defense." The use of the qualifying adjective in this expression has been criticised as neither necessary nor proper. There is no self-defense except that which is justifiable. If it is self-defense it is justifiable. (*People* v. *Biella,* 374 Ill. 87; *People* v.

*Triolo,* 332 Ill. 410.) But the erroneous use of the term "justifiable self-defense" does not require reversal where other instructions fully define the circumstances under which the defense is available. (*People* v. *Biella,* 374 Ill. 87; *People* v. *Triolo,* 332 Ill. 410.) We are of the opinion that none of the language complained of in this instruction resulted in prejudice to the defendant.

People's instruction No. 17 is identical in language with the instruction appearing on page 17 of the opinion in the case of *People* v. *Tamborski,* 356 Ill. 11. In that case the evidence was clear that a fight occurred between defendant and deceased in which the fatal injuries were sustained, but was in conflict as to who started the fight. Defendant interposed a plea of self-defense based on the theory that when deceased and his son approached him he was put in fear of suffering bodily harm, and that the deceased grabbed hold of him. In that case we held that the instruction was not improperly given, and that it was a correct statement of abstract legal propositions applicable alike to all prosecutions for homicide where self-defense is an issue. The giving of this instruction was not, as defendant claims, held to be error in the case of *People* v. *Clark,* 368 Ill. 183. The instruction there condemned told the jury that if, at the time the mortal wound was inflicted, it was not necessary, or apparently necessary, in order to save defendant's own life or to prevent his receiving great bodily harm, the killing could not be justified under the plea of self-defense. That instruction was erroneous because it made the test of self-defense depend upon what the jury believed necessary or apparently necessary, and not upon what the defendant, acting as a reasonable person, believed. An instruction such as the one in the *Clark case,* or an instruction making the test what a reasonable person under the same circumstances would have been induced to believe, is, as we pointed out in the case of *People* v. *Grady,* 381 Ill. 224, a quite different instruction from one requiring the

jury to determine what the defendant, as a reasonable person, believed. Instruction 17 in the case before us made the test of defendant's right of self-defense depend upon what she, as a reasonable person, believed. No error was committed in giving it. (*People* v. *Grady,* 381 Ill. 224; *People* v. *Clark,* 368 Ill. 183.) It is not subject to the criticism that it requires proof that the killing was absolutely necessary.

People's instruction No. 18, which is complained of, told the jury that the law of self-defense does not imply the right of attack in the first instance or permit of action done in retaliation or for revenge, and further informed the jury that if it believed from the evidence, beyond a reasonable doubt, that the defendant sought or brought on a difficulty with the deceased at the time of the stabbing, or that she stabbed and killed at a time when she had no reasonable cause to apprehend the approach of immediate or impending injuries to herself, and did so from a spirit of utter disregard of human life, or from a motive of revenge or retaliation, then she could not avail herself of the law of self-defense. The giving of this instruction is proper in cases where the evidence tends to show that the defendant was the attacking party. (*People* v. *Booker,* 378 Ill. 334; *People* v. *Clark,* 368 Ill. 183; *People* v. *St. Lucia,* 315 Ill. 258.) The theory of the prosecution was that defendant was the aggressor on the occasion when the fatal stabbing occurred. There was evidence tending to support that theory, and the giving of the instruction was not error. (*People* v. *Hauke,* 335 Ill. 217.) It is defendant's contention that deceased was the aggressor in the fight; but it is not required that the People's instructions conform to the defendant's theory of the case. *People* v. *Konkowski,* 378 Ill. 616.

Instruction No. 20 told the jury that if it believed from the evidence, beyond a reasonable doubt, that the crime charged was committed and that the defendant, immedi-

ately after the commission of the crime charged, fled and remained away until taken into custody, or until she surrendered, that such flight was a proper circumstance to be considered in determining the guilt or innocence of the defendant. The objection made to this instruction is that it ignores the circumstances surrounding the so-called flight, and that it was error to give it to the jury without further instructing it to consider the evidence tending to explain the flight. Flight does not raise a presumption of guilt, and the jury was not instructed that it did. It is merely a proper circumstance to be considered in determining the guilt or innocence of the accused, and the instruction so informed the jury. An instruction such as the one in this case is properly given where there is evidence on which it may be based. (*People* v. *Schaffner*, 382 Ill. 266; *People* v. *Brothers*, 347 Ill. 530.) Immediately after the stabbing the defendant left and could not be found by the police until six days later when her attorney surrendered her to custody. She testified to circumstances and reasons which she claimed excused her flight. The instruction did not direct a verdict. It contained a correct statement of the law. (*People* v. *Brothers*, 347 Ill. 530.) As hereinbefore pointed out, it is not necessary that the People's instruction conform to the defendant's theory of the case. And this, of course, would be true as to any particular part or phase of the case. Defendant requested no instruction with reference to her explanatory theory in excuse of her flight and concealment, and is now in no position to complain because none was given. *People* v. *Maertz*, 375 Ill. 478.

It is urged that it was error to permit Della Julian to testify to what was said by deceased during the time defendant was banging on her door. These statements were made immediately prior to the affray and almost contemporaneously therewith. They were an immediate and important accompaniment to the crime charged. What was

said and done by both the deceased and the defendant during the time defendant was trying to gain admittance into the apartment were so closely connected in point of time and in causal relation to the fight in which deceased was mortally wounded as to come clearly within the rule of *res gestae* laid down in *People* v. *Jarvis,* 306 Ill. 611. The trial court did not err in admitting this evidence. We do not agree with defendant that these statements of deceased were not made in her presence and were therefore inadmissible. The evidence tends to prove they could have been plainly heard by defendant. But regardless of whether made in her presence, they were admissible as characterizing the conduct of the deceased and tending to show her state of mind at the time defendant gained entrance to her apartment. *People* v. *Durand,* 307 Ill. 611.

Defendant contends that the court erred in sustaining objections to questions asked the witness Richard Tapley concerning the quarrelsome and dangerous character of deceased when under the influence of intoxicating liquor. At that stage of the trial there was no proof in the record that the deceased was the assailant, and the ruling of the court was right. (*People* v. *Terrell,* 262 Ill. 138; *Carle* v. *People,* 200 Ill. 494; *Cannon* v. *People,* 141 Ill. 270.) After defendant had testified that the deceased had attacked her without provocation, the evidence of Tapley as to the dangerous character of deceased was received. This is in accordance with the previous ruling of this court.

Defendant also assigns as error the refusal of the trial court to strike the testimony of Juanita Jones, who was not an eyewitness and was called by the court at the request of the People. This court has never held, either in the cases cited by defendant (*People* v. *Cleminson,* 250 Ill. 135; *Carle* v. *People,* 200 Ill. 494,) or in any other case, that the power of a trial court to call a witness is limited to the calling of an eyewitness. *People* v. *Touhy,* 361 Ill. 332.

The witness Della Julian was permitted to testify to the reputation of the deceased based only upon her personal opinion. ·This was not in accordance with the general rule as to proof of reputation. (*People* v. *Willy*, 301 Ill. 307.) Her testimony should have been stricken. However, from a careful examination of the entire record, we are satisfied the defendant was not prejudiced by this evidence. The quarrelsome and dangerous character of deceased when intoxicated was fully presented to the jury. Evidence was also introduced showing that deceased had been drinking on the occasion in question. Defendant testified that during the past seven years she had gone out in company with the deceased about six times a week and knew of her dangerous disposition when intoxicated. As inferentially stated in *People* v. *Allen*, 378 Ill. 164, it is not the general reputation of the deceased for violence, but accused's knowledge of her dangerous character which is of importance in determining defendant's state of mind at the time she struck the fatal blow. Under the evidence and the circumstances shown by the evidence in this case, we do not see how the jurors could have been prejudicially influenced by the personal opinion of Della Julian concerning the reputation of the deceased.

The defendant, upon cross-examination and over her objection, was interrogated concerning the wounds of the deceased and was asked whether Missouri Perkins was dead. The State's Attorney also asked the defendant whether she went back to the room, knocked on the door, and went in and stabbed Missouri Perkins; and upon objection made to the question stated, "All we are looking for is the truth." We do not consider that the rights of the defendant have, as she claims, been so highly prejudiced by these questions and by this remark of the State's Attorney that the verdict of the jury should not be allowed to stand.

The remaining contention of the defendant is that the evidence is insufficient to sustain her conviction. It is argued that the undisputed facts show that the deceased was the aggressor and that the stabbing and homicide were committed by the defendant in self-defense. It is quite clear and undisputed that the deceased previously on the night in question had attacked the defendant. There is also evidence which is undisputed that an interval of time had elapsed thereafter. There is evidence further that, immediately prior to the fatal encounter of the parties, the deceased was in her apartment with a locked door between her and the defendant; that deceased did not desire the door opened and had called for the police; that defendant was beating on the door, threatening to break it down; and that when the door was opened she rushed in screaming that she was going to kill the deceased. Notwithstanding defendant's knowledge of deceased's dangerous disposition, as testified to by her, it is apparent from her determined effort to enter the apartment that she was not afraid. It was the deceased and not defendant who called on the police for protection. The defendant contradicted much of the testimony given by the other witnesses, both as to her utterances and her conduct at and immediately prior to the time of the killing. If the homicide occurred as testified by the defendant, it cannot be said that the jury was warranted in finding her guilty of murder. But the law has entrusted to the jury the duty of determining the truth as between contradictory evidence; and it is no ground for reversal that the jury did not believe the story told by defendant. It saw her and heard her testify, and had the opportunity of observing her demeanor, an important factor not accorded this court. We have carefully read her testimony and are not convinced of its truth and sincerity. The determination of the guilt or innocence of an accused is a matter committed, in the first instance, to

the jury; and this court will not disturb a verdict of guilty on the ground that the evidence is not sufficient to convict unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to justify us in entertaining a reasonable doubt as to the defendant's guilt. The defendant in this case has had a fair trial, free from prejudicial error. We are not warranted in interfering with the judgment of the trial court, and the same will therefore be affirmed.

*Judgment affirmed.*