(No. 24754.—

The People of the State of Illinois, Defendant in Error, *vs.* Ralph Brindley, Plaintiff in Error.

*Opinion filed October 21, 1938.*

Wilson, J., dissenting.

R. B. Hendricks, and Robert Rutledge, for plaintiff in error.

Otto Kerner, Attorney General, Louis P. Zerweck, State's Attorney, and A. B. Dennis, (R. V. Gustin, of counsel,) for the People.

Mr. Justice Gunn delivered the opinion of the court:

Plaintiff in error, Ralph Brindley, (hereinafter referred to as defendant,) was convicted in the city court of East St. Louis of the murder of Charles Vaughn and his punishment fixed at fifty years in the penitentiary. At the conclusion of the People's case, and again at the conclusion of all the evidence, a motion for a directed verdict of not guilty was made and was denied by the court. Brindley prosecutes this writ of error.

On the evening of March 28, 1937, defendant was working in a tavern in East St. Louis owned by James Gable. With him was his wife, together with his former wife, Mrs. Walker, and her husband, Mr. and Mrs. Kaase, Harry Griffin and Rose Stennenn. Later in the evening Brindley asked Kaase and Griffin to go with him to "Callaghan's" for the purpose of organizing a baseball team on which he wanted to play. Defendant went to get his hat and coat and was in full view of those present. No gun was noticed by any of them, and, after putting on his coat, nothing was

observed which indicated he was carrying a gun. Kaase, Griffin and the defendant then entered Kaase's automobile and nothing was said which suggested defendant was going to have trouble with anyone. As they approached the intersection of Fifth street and Missouri avenue in East St. Louis, the automobile was stopped and the defendant got out, saying that he would return in a few minutes. The driver of the car parked about a block away although no directions were given him by defendant where to park. Defendant went into a tavern operated by deceased situated at 502 Missouri avenue. It was a combination bar and cabaret with a partition separating them. The bar ran to the front of the tavern at right angles to the partition. In the rear of the cabaret was a small hallway and toilet for men. A partition set off the toilet for women, leaving a small space large enough in which to open a door. Defendant, upon entering, went to the bar, ordered a bottle of beer, drank part of it, walked to the back room, then returned and finished his drink. He spoke to Mrs. Vaughn, addressing her as "Elsie." When he first came in, Vaughn did not notice him as he was talking to some other people. Defendant went over, tapped deceased on the shoulder and said, "I would like to see you a second," and then walked through the partition leading into the toilet for women with Vaughn behind him. While back in this part of the building, Vaughn was killed by the defendant with a gun which formerly had been in defendant's possession.

The only testimony in the record as to what occurred behind the partition is that of the defendant. He says when they got around the partition, the deceased drew a revolver and said, "You —— —— —— —— ——, you are looking for it and are going to get it." Defendant grabbed the gun as the shot went off, wrested it from the deceased's hands, fell into a corner and commenced shooting. He then ran out through the alley and got into the car with Kaase and Griffin, stating he had some trouble in the place. That

night he went over to St. Louis, where he was apprehended on the fourth of April, 1937. While driving away, Kaase and Griffin saw him throw something from the car. The gun which killed Vaughn was later found by the police.

The evidence shows that, as a part of his duties, defendant had to go to one Murdock twice a month on pay days to procure money for the purpose of cashing customers' checks. On these trips he did carry a gun owned by his employer, Gable, for the protection of the money. On March 23, 1937, Murdock had sent $300 in cash out to the tavern, and on the evening of the same day, defendant, in company with one Gaston, returned the money, taking Gable's gun with him for protection. He left Gaston at this place, walked a block to Vaughn's tavern and asked him if he had seen a certain piano player whom he wished to hire. He says he then gave Gable's gun to Vaughn to keep, because of his fear of being arrested with it on his person. At this time he was owing the deceased five dollars.

Defendant also claims a young man was sent to his place by the deceased on March 26, with a message from Vaughn to do something he didn't want to do, and in a telephone conversation between defendant and Vaughn it appears that the latter wanted him to take care of some "stuff" which he refused to do, causing Vaughn to say that he was not his friend, and in the same conversation demanding that defendant pay the five dollars he owed him. Neither defendant nor the People saw fit to bring out what was meant by "stuff." Defendant and Vaughn had each previously been convicted of a felony.

The first error charged by defendant is that prejudicial error was committed by the trial court in conducting part of the trial in the absence of defendant. It appears that during the course of the trial which commenced on September 20, 1937, seven jurors were accepted the first day, when the panel became exhausted. On the following morning, the record shows that the seven jurors selected and sworn

were retired to the jury room to remain until the jury was completed. The court then proceeded with thirteen talesmen present, and one juror was selected, sworn, and retired with the other seven jurors. After the four remaining jurors were selected and sworn, recess was taken and at 1:45 that day the jury was sworn in as a whole. The record shows that the last five jurors were selected in the absence of the seven chosen the first day, and on the second day defendant's counsel objected to proceeding further in the case. In a statement for the record coming from the court, the following occurs: "The court convened this morning at 10:00 o'clock. The defendant wasn't present. All attorneys for the State and defendant were present. The names were called of the talesmen." The record further shows that at the beginning of the day of the twenty-first, the defendant was in court and that a recess was taken until 1:45. The record, as of 1:45, shows that the court proceeded with the trial but does not show who were present. An affidavit of the defendant states that at 1:30 on that day he was in jail and that the juror's oath was administered out of his presence. The affidavit of John Desmond, clerk of the court, shows that he swore the jury at about 1:30 o'clock and that defendant was not then in the court room and did not enter until after the jury had been sworn. The affidavits of Foss D. Meyer, a practicing attorney, and of Robert Rutledge, one of the attorneys for defendant, revealed that, at other times, proceedings were taken in the trial when defendant was absent.

The law is clear that in all felony cases the accused shall have the right to appear and defend in person or by counsel, and must be personally present in court throughout the trial, and this must affirmatively appear from the record. (*Harris* v. *People*, 130 Ill. 457; *People* v. *McGrane*, 336 id. 404.) While it is true there is a presumption that the defendant was present throughout the trial where the record shows he was present at the beginning of

the trial (*People* v. *Pierce,* 369 Ill. 172) yet the record here, and the affidavits, show a situation where several important matters of procedure were conducted outside the presence of the defendant. Standing alone, it is perhaps not reversible error but the practice is not to be commended.

During the trial, however, and after the defendant had testified, evidence was offered to prove that the general reputation of the deceased in the community in which he lived was that of a dangerous, quarrelsome and vicious man. Upon objection of the State's attorney, this offer was refused and is here urged as error. It also appears from the evidence that the accused claimed the deceased first assaulted him and, in the scuffle, he wrested a gun from the possession of the deceased with which he fired the shots resulting in deceased's death. The statute provides that in homicide cases, the killing being proved, the burden of proving circumstances of mitigation or that justified or excused the homicide, devolved upon the accused. Ill. Rev. Stat. 1937, chap. 38, par. 373, p. 1147.

We have previously held that in determining the question of self-defense or of mitigating circumstances, proof that the deceased, where he is claimed to be the assailant, was a violent and dangerous man, is competent evidence to be received by the jury. (*Cannon* v. *People,* 141 Ill. 270; *Carle* v. *People,* 200 id. 494; *People* v. *Terrell,* 262 id. 138.) It is necessary, however, that there be some testimony showing that the deceased was the assailant, and that appears in the record here. The action of the court in sustaining the objection of the People to such evidence, was error. In the cases cited by the People, similar evidence was offered at a time when there was nothing in the record to show that the deceased was the assailant, contrary to the situation here, and they are, therefore, inapplicable.

Defendant also asserts the trial court erred in refusing to direct a verdict of not guilty. Under the facts shown in this record, it was not error for the court to refuse to

direct such a verdict either at the close of the People's testimony or at the close of all of the testimony, as the evidence shows the deceased was killed by defendant, and the question of whether he was guilty as charged was, under the evidence, one wholly for the jury.

A question is also raised as to the propriety of the remarks of the State's attorney referring to the provisions of the Parole law but they are not set forth in the bill of exceptions, and, while it appears that the citations made by the defendant in this respect are in point, it is unnecessary to pass upon this question as doubtless it will not recur upon a new trial.

For the errors indicated, the judgment is reversed and the cause remanded to the city court of East St. Louis.

*Reversed and remanded.*

Mr. JUSTICE WILSON, dissenting.