THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEFF JONES, Defendant-Appellant.

Fourth District   No. 13379

Opinion filed April 29, 1976.

J. H. Weiner and Michael J. Costello, both of Springfield, for appellant.

Homer J. Tice, State's Attorney, of Petersburg (G. Michael Prall and Jeffrey B. Levens, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant Jeff Jones was charged in the Circuit Court of Menard County with committing a battery upon Dan Rose. Defendant was found guilty by a jury and fined $125 and costs. He appeals, complaining of various evidentiary rulings and the giving of one of the People's instructions and contending that he was deprived of due process and equal protection of the law.

On September 18, 1974, defendant and Rose were playing touch football in a high school physical education class on opposing teams. They were of similar size but Rose was a 14-year-old sophomore and defendant a senior, 3 years older. They played opposite each other, and when defendant was rushing the passers he knocked Rose over on several occasions. Rose testified that he moved from one side of the line to the other to get away from defendant but defendant followed him. Defendant admitted that he wanted to rush against Rose because he was easy to get by. According to Rose, defendant and another senior double teamed Rose twice, once knocking him over and once picking him up and throwing him over. Defendant admitted that he and his companion were "messing around" with Rose. From the defendant's play the jury could have inferred that defendant was concentrating on knocking over Rose rather than rushing the passers or tagging the ball carrier. The class instructor testified that the rules of the game permitted body contact but not knocking players over. Defendant testified that he was not informed of the rule.

On the last play of the game, Rose fell to the ground in attempting to dive after a ball carrier. Defendant was nearby. Rose testified that he got up, walked to defendant, put his arm on defendant's shoulder and said "Listen Jones." Rose stated that he was going to tell the defendant to quit picking on him. Defendant then hit Rose with his fist, breaking his nose. Six of defendant's friends testified that they saw Rose swing at defendant before defendant hit Rose. Defendant testified that Rose came running at him with his hand out and that he thought Rose was going to hit him. Defendant testified that he then stepped back and hit Rose.

When called by the State, Shirley Rose, the victim's mother, testified on direct examination that she had a conversation with defendant a few days after the occurrence. Without objection, she stated that defendant had told her that he didn't intend to hit Rose as hard as he did and that as Rose approached him, he thought Rose was going to hit him. The witness then started to state the response she made to the defendant when defense counsel stated, "I object to what she said." The objection was overruled,

and the witness stated that she told the defendant that he had been in classes with her son and knew he was not the kind of boy to start a fight.

On Mrs. Rose's cross-examination she was asked if her statement to defendant about her son's propensities to start a fight reflected her own opinion. She answered that other people had also told her this. On redirect she said that when she told defendant that he knew her son was not likely to. start a fight, defendant nodded his head affirmatively.

■■ Defendant's objection as to "what she said" is ambiguous. Defendant contends that he raised the relevancy objection. An objection that does not state specific grounds raises the relevancy objection. (Cleary, Handbook of Illinois Evidence §7.2 (2d ed. 1963).) Defendant contends that overruling of this objection was error because the good character and reputation of a victim of crime is not relevant until the defendant has raised the issue of the victim's character.

■■ Evidence of an individual's character is sometimes admissible as circumstantial evidence of what "his acts (and sometimes his accompanying state of mind) probably were." (McCormick, Handbook of the Law of Evidence §186 (2d ed. 1972).) Where a defendant claims self defense, he is permitted to introduce evidence of the vicious character of the victim to show who was the probable aggressor. (Cleary, Handbook of Illinois Evidence §12.7 (2d ed. 1963); *People v. Brindley*, 369 Ill. 486, 17 N.E.2d 218.) McCormick, Cleary, and most of the decisions discuss the introduction of evidence of the victim's character only as applied to homicide cases. The rules on its admission are also applicable to battery cases, however. (Annot., 1 A.L.R.3d 571 (1965).) Neither party here contends that the rules are inapplicable because of the nature of the charge. By the Illinois and majority rule, the prosecution may put on evidence of the victim's peaceful character only if the defendant has first offered evidence of the victim's vicious character. *Kelly v. People*, 229 Ill. 81, 82 N.E. 198.

The reason for the majority rule is explained as follows:

"This has the advantage of permitting the accused to give evidence of self-defense and still keep out altogether this 'collateral' evidence of character, in keeping with the general tradition against using evidence of character to show conduct. It restricts the opportunity for the appeal to pity and vengeance implicit in the praise of the character of the deceased. It has, moreover, an attractive consonance with the rule as to the exclusive privilege of the accused to put his own character 'in issue'." McCormick, §193, at 461.

■■ Rose's mother testified that defendant said that he hit Rose but did so because he thought Rose would otherwise hit him.

"A person is justified in the use of force against another when and

to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." (Ill. Rev. Stat. 1973, ch. 38, par. 7—1.)

Rose's mother's statement, made in defendant's presence, that defendant knew that Rose was not a person likely to start a fight was probative as to defendant's state of mind, which in turn bore upon the issue of whether defendant reasonably could have believed that he needed to hit Rose in order to defend himself. (Cleary, §12.7; *People v. Gibson*, 385 Ill. 371, 52 N.E.2d 1008.) Reception of this evidence for this reason was not the "using of evidence of character to show conduct" likely to be engaged in by the victim, which McCormick says should be the exclusive option of the defendant. It did not involve a "collateral issue" but rather the defendant's state of mind at the time of the allegedly offensive act. A prohibition against the State's first introducing this evidence would not be "in consonance with the privilege of the accused to put his own character in issue." Some prejudice may arise to the defendant because of "pity and vengeance implicit in the praise of the character" of the victim but this prejudice is far outweighed by the probative value of the testimony. We find no error in admitting this evidence in the face of the objection made.

■■ Over defendant's similar relevancy objection, the State was permitted to ask three defense witnesses about the victim's reputation for being peaceful and law abiding. Two answered that they did not know, but one answered, "He is not a very hostile person, I guess." Such questions would have been clearly improper if it were not for the cross-examination of Rose's mother. She was asked by defendant if the appraisal she purported to ascribe to defendant of her son's propensities to start a fight was her opinion also. At that time defendant interjected into the case the question of Rose's character which could be considered only as a question as to who was the aggressor and did not bear upon the defendant's state of mind. The question of Rose's character then became relevant and the stated objection was properly overruled.

Over defendant's objection, the court gave to the jury People's Instruction 11, which was based on IPI Criminal No. 24.11, and which stated:

"A person is not justified in the use of force if he initially provokes the use of force against himself with the intent to use that force as an excuse to inflict bodily harm upon the other person."

■■ Defendant maintains that there was no evidence to support the instruction. The testimony that defendant followed Rose from one side of the line to the other, roughed him more than the rules permitted, and apparently did so for reasons other than the furtherance of the success of

defendant's team was all circumstantial evidence of defendant's provoking Rose to hit the defendant so that he might retaliate.

■■ Defendant's claim of due process and equal protection deprivation is apparently based on his contentions that he was not proved guilty beyond a reasonable doubt and that cumulative error in evidentiary rulings denied him a fair trial. The jury could have believed Dan Rose's testimony as to the occurrence. This was contradicted by defendant's witnesses who said that Rose struck at defendant. Their testimony, however, was inconsistent with that of the defendant who did not say that Rose struck at him. The jury was not required to believe that defendant reasonably believed that it was necessary to hit Rose to protect himself. The evidence was sufficient to prove the defendant's guilt beyond a reasonable doubt.

We find no cumulation of error sufficient to deprive defendant of a fair trial.

The judgments of conviction and sentence are affirmed.

Affirmed.

TRAPP, P. J., and CRAVEN, J., concur.