THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY ROBINSON, Defendant-Appellant.

Fifth District   No. 77-70

Opinion filed December 30, 1977.

Edward L. Welch, of Edwardsville, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish and John A. Clark, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

On August 16, 1976, an information was filed in the Circuit Court of Madison County charging defendant, Larry Robinson, with aggravated battery "in that said defendant did intentionally and without legal justification strike Robert Albrecht in the face, * * * knowing Robert Albrecht to be a peace officer engaged in the execution of his official duties." (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(b)(6).) After a bench trial, defendant was convicted of the foregoing charge, placed on probation for a period of two years and fined $500. This appeal followed.

Defendant's defense at trial was to prove that he did not strike Robert Albrecht, and that Albrecht had charged him with doing so in order to conceal the truth, which was, according to defendant, that after stopping defendant for a traffic violation, Albrecht lost his temper and struck him.

Defendant now contends that the trial court erred in refusing to admit evidence that the F.B.I. was investigating charges that Albrecht frequently used excessive force, especially against black individuals, in the course of his duties as a police officer, evidence of specific instances in which Albrecht had allegedly employed excessive force, and evidence that on November 23, 1976, Albrecht had been suspended from the Alton police force for conduct unbecoming a police officer.

Defendant's trial was commenced on December 20, 1976. In the course of his opening argument, defense counsel stated that, "the defendant intends to show that he has given a formal statement; his witness, Michael Everege, who was on the scene, have both given formal statements to the Federal Bureau of Investigation concerning this matter, and that, to the best of our knowledge, charges are pending in that regard." When the State objected to this statement, defense counsel further explained that "this officer has used excessive force against both white people and black people, but he has been particularly, notoriously bad in using force against black individuals and that has * * * become a subject matter of investigation." The State's objection was then sustained, the trial proceeded and the following evidence was adduced therein.

Robert Albrecht testified that he was employed by the City of Alton as a police officer and that on June 25, 1976, he was on routine patrol from 11 p.m. to 7 a.m. Albrecht said that at approximately 12:30 a.m. he proceeded to the 400 block of East Tenth Street in Alton after receiving a radio communication requesting a backup unit at that address. Upon reaching his destination, Albrecht saw that Officer Ronald Smith had stopped a black, two-door, 1973 Buick automobile and was standing near the Buick on the driver's side. The defendant and Michael Everege were also standing near the Buick, conversing with Officer Smith. According to Albrecht, Smith said that he was going to give defendant a traffic citation and then asked defendant for permission to search his car. Defendant replied "something to the effect to go ahead and look * * * and if you find anything, I'll kiss your * * *." Officer Smith then walked around defendant's car and began searching its interior through the door on the passenger's side. Albrecht walked to the driver's side door, squatted down, and also began searching the vehicle's interior.

Officer Albrecht further testified that as he and Officer Smith searched the car, defendant asked if they had a search warrant. When Smith replied that defendant had given them permission to search, defendant said that he had changed his mind. He then grabbed Albrecht by the shoulder and pulled him into an upright position, wedging him between the door and the frame of the car. Albrecht responded by pushing defendant toward the rear of the car. At this point, defendant began swinging at Albrecht with his fists, striking him several times in the head

and face. Albrecht quickly ended the fracas by striking defendant on the head with his flashlight, knocking him to the ground. After subduing defendant, Albrecht searched him and found four "live rounds of thirty-eight caliber hollow points" in one of defendant's pants pockets.

Upon cross-examination, Officer Albrecht stated that he was 6 feet, 4½ inches tall and weighed 218 pounds. He estimated that defendant was 5 foot 10 and weighed approximately 150 to 160 pounds. In explanation of his earlier testimony, Albrecht said that when defendant had grabbed his shoulder, Officer Smith had moved toward the driver's side of the car. Albrecht also stated that he and Smith struck defendant on the head simultaneously after defendant began swinging his fists. Defense counsel then asked Albrecht to explain his present status with the police force, but the State objected. When the State's objection was sustained, defense counsel elicited the following testimony as an offer of proof. Albrecht stated that on November 23, 1976, he had been suspended from the police force for conduct unbecoming a police officer; he was to be reinstated on December 23, 1976. Upon further questioning, Albrecht stated that he had been suspended for striking a motorist without justification. He then explained the incident which led to his suspension as follows. Albrecht, who was off duty, out of uniform and driving his personal automobile, began making a right turn, but was prevented from doing so when a motorist tried to pass him from the right side. Albrecht made his turn farther down the street, but the motorist followed and began "tailgating" him. Albrecht thereupon stopped his car in front of the motorist, walked back to the other vehicle, reached through its window and slapped the motorist twice in the face. At the conclusion of the foregoing testimony, defendant's offer of proof was rejected by the trial court.

Officer Ronald Smith testified that on the night in question he saw defendant miss a stop sign and continue driving 50 miles per hour in a 30-mile-per-hour zone. Because Smith was forced to chase defendant for about eight blocks before defendant pulled over, he requested a back-up unit over the police radio. Smith's testimony concerning the events which followed corroborated Officer Albrecht's version of the incident.

Officer John Clayton testified that he also answered Ronald Smith's request for a backup unit. Although he was present during the "scuffle" between defendant and Officer Albrecht, he did not see any punches thrown because he was watching Michael Everage to make sure that "he would not jump on Albrecht's back." Clayton did, however, see defendant grab Officer Albrecht by the shoulder and pull him up. He also saw Albrecht push defendant.

The first witness for the defense was Danny Cloninger. He said that at approximately 7:30 p.m. on November 19, 1976, he was driving to his apartment when a Datsun automobile veered sharply in front of him,

preventing him from making a right turn. Cloninger turned right at the next intersection, still behind the Datsun. The person driving the Datsun slowed his vehicle several times, but refused to allow Cloninger to pass him. Eventually, the Datsun stopped, and Cloninger was forced to stop behind it. A man, identified as Robert Albrecht, got out of the Datsun, pulled back his coat, and pointed to a pistol strapped to his side. According to Cloninger, Albrecht said "don't you ever try to pass me on the wrong side of the road." He then reached into the car, grabbed Cloninger by the neck, and struck him twice in the left eye. Cloninger later went to the police station and reported the incident. At the station, a policeman asked Cloninger if he would change his story if he knew that the man driving the Datsun was a policeman, but Cloninger refused to do so. Cloninger concluded his testimony by saying that Albrecht had apologized to him outside the police station. After Cloninger was subjected to cross and redirect examination, the State moved to strike his testimony as irrelevant. The trial court ruled, however, that the State's motion was not timely.

Michael Everege testified that on June 25 he and defendant had driven to a gas station and were returning to defendant's home when they were stopped by a police car. According to Everage, Officer Albrecht was the first policeman to approach defendant's car and it was Albrecht who asked them to get out. Everege also said that he "guessed" that Albrecht found some empty bullet cartridges because Albrecht said something about a gun. Defendant then said that if Albrecht found a gun in the car he would "kiss his * * *." Albrecht replied that he was going to search defendant's car. As Albrecht conducted his search, defendant tapped him on the shoulder and told him to stop. Albrecht's response was to stand up, turn around, and strike defendant on the head with a flashlight. When Albrecht struck defendant a second time, defendant's glasses fell off. Everege said that he did not see defendant strike or swing at Albrecht. Everege further testified that two other police officers arrived at the scene as Albrecht began searching defendant's car.

Sergeant Donald Lovell, testifying for the defense, said that he arrived on the scene after defendant had been taken into custody. He also testified that he had heard a radio communication in which Ronald Smith indicated that he was going to stop defendant's car and requested a backup unit.

At the conclusion of Sergeant Lovell's testimony, defense counsel informed the trial court that he had intended to call eight witnesses, all of whom were identified by name and address, to testify concerning Officer Albrecht's "unwarranted use of force, acting beyond the scope of a police officer." However, "in view of the court's rejection of the defendant's offer of proof this morning on the subject matter," defense counsel did not

call the witnesses and merely stated that they "would all testify as to situations where they have been mistreated physically by officer Albrecht in an unprovoked manner." Defense counsel then described in detail what one of the witnesses would have said if allowed to testify. Defendant's offer of proof as to that single witness was denied.

The defendant, testifying in his own behalf, said that he knew Robert Albrecht because they had attended junior high school together. His version of the incident in question was virtually identical to Michael Everege's. He denied striking or swinging at Officer Albrecht. During redirect examination, defendant was asked if he had testified concerning his case on any previous occasions. Defendant replied that, "I talked to an F.B.I. agent. I never testified. He came to my house and I talked to him." The State objected and asked that defendant's answer be stricken as irrelevant to any issue presented in the case. This objection was sustained despite defense counsel's argument that proof that the F.B.I. was investigating Officer Albrecht's conduct was relevant to demonstrate that Albrecht had a motive to testify falsely. In explaining the nature of defendant's proposed testimony, defense counsel stated that, "I would like to make a showing with respect to the nature of the inquiry * * * and the purpose of the investigation as he [defendant] knows it."

Defendant's first contention is that evidence of an F.B.I. investigation was relevant and should have been admitted because it demonstrated that Officer Albrecht had a motive to testify falsely. See, *e.g., People v. Mason*, 28 Ill. 2d 396, 192 N.E.2d 835 (1963).

The only evidence offered by defendant regarding the alleged investigation consisted of his own testimony that an F.B.I. agent came to his home and spoke with him concerning his encounter with Officer Albrecht. Defendant's offer of proof did not reveal the source of his knowledge that the F.B.I. was investigating charges that Albrecht had committed acts of "police brutality." In all probability, defendant's knowledge of these matters was not firsthand, but was derived from statements made by the agent, in other words, hearsay and would involve defendant testifying to specific acts of misconduct by Albrecht which we discuss below.

■■■ The purpose of an offer of proof is to indicate to the trial court, opposing counsel and a court of review the nature and substance of the evidence offered (*In re Estate of Minsky*, 46 Ill. App. 3d 394, 360 N.E.2d 1317 (1st Dist. 1977)), and where it is not clear what a witness will say, or what his basis will be for saying it, a detailed and specific offer of proof is required. (*Hession v. Liberty Asphalt Products, Inc.*, 93 Ill. App. 2d 65, 235 N.E.2d 17 (2d Dist. 1968).) Furthermore, where admissible and inadmissible testimony is included in an offer of proof, the entire offer may be rejected. (*Hairgrove v. City of Jacksonville*, 366 Ill. 163, 8 N.E.2d

187 (1937); Annot., 89 A.L.R.2d 279, 309 (1963).) We cannot say that the trial court erred in rejecting defendant's offer of proof here, as it did not reveal the basis of defendant's testimony and there was a strong probability that it was based upon inadmissible hearsay.[1]

■■ Defendant's next contention is that the trial court erred in excluding the testimony of eight witnesses, all of whom would have stated that Officer Albrecht had used unwarranted force against them in the course of his duties as a policeman. The State points out that defendant recounted in detail the proposed testimony of only one of the eight witnesses and argues that defendant's offer of proof was insufficient as to the other seven. Prior to defendant's offer of proof, however, the trial court had already indicated that it would probably not admit evidence of this nature. A detailed, formal offer of proof is not required when it is apparent from the attitude of the court that the proposed evidence will be rejected. (*Vander Veen v. Yellow Cab Co.*, 89 Ill. App. 2d 91, 233 N.E.2d 68 (1st Dist. 1967).) Defense counsel here clearly explained the nature and basis of the proposed testimony of the eight witnesses and, under the circumstances, we feel that this was sufficient. We will, therefore, consider whether it was error to exclude the testimony of all the witnesses.

In contending that the evidence of Officer Albrecht's specific acts of violence should have been admitted, defendant speaks of "intent" and "common design or scheme." Defendant is simply arguing, however, that if Albrecht committed unprovoked acts of violence in the past, it is more likely that he did so in the instant case. Stated more precisely, defendant contends that the evidence of Albrecht's specific acts of violence was relevant to show that he was of a violent disposition.

■■ It is well settled that where a defendant claims self-defense and preliminary testimony establishes an act of aggression by the alleged victim of defendant's acts, the defendant is permitted to introduce evidence concerning the violent temper and disposition of the victim and any prior threats or misconduct by the victim directed towards the defendant. (*People v. Stombaugh*, 52 Ill. 2d 130, 284 N.E.2d 640 (1972); *People v. Stepheny*, 46 Ill. 2d 153, 263 N.E.2d 83 (1970); *People v. Adams*, 25 Ill. 2d 568, 185 N.E.2d 676 (1962).) Although defendant here has not claimed self-defense, he has introduced evidence indicating that Officer Albrecht attacked him. For this reason, we feel that evidence of Albrecht's violent temper and disposition was relevant because it tended to corroborate defendant's version of his encounter with the officer. See

---

[1] We also note that Officer Albrecht was not questioned by the defense concerning the investigation although several Illinois decisions indicate that such a foundation must be laid before the presentation of extrinsic evidence tending to discredit a witness for bias, interest or motive to testify falsely. See *Aneals v. People*, 134 Ill. 401, 25 N.E. 1022 (1890); *People v. Payton*, 72 Ill. App. 2d 240, 218 N.E.2d 518 (5th Dist. 1966); *People v. Rainford*, 58 Ill. App. 2d 312, 208 N.E.2d 314 (1st Dist. 1965); Annot., 87 A.L.R.2d 407 (1963).

*People v. Brindley,* 369 Ill. 486, 17 N.E.2d 218 (1938); I Wigmore, Evidence §63 (3d ed. 1940); Annot., 1 A.L.R.3d 571, 601 (1965).

■■ The question remains, however, whether evidence of specific violent acts is admissible to prove that a witness has a violent character. Although the terms "character" and "reputation" are often used synonymously, "character" means what a person really is while "reputation" means what he is supposed or estimated to be. (*People v. Hicks,* 362 Ill. 238, 199 N.E. 368 (1936).) A person's specific acts are obviously more probative of that person's character than is his reputation, and two recent opinions of the First Appellate District have indicated that while specific acts of prior aggression are not admissible to prove one's reputation, they may be admissible as tending to establish one's character. (See *People v. Montgomery,* 51 Ill. App. 3d 324, 366 N.E.2d 623 (1st Dist. 1977), and *People v. Baer,* 35 Ill. App. 3d 391, 342 N.E.2d 177 (1st Dist. 1976).) Wigmore shares this view, stating that:

> "* * * [T]here is no substantial reason against evidencing [turbulent] character by *particular instances of* violent or quarrelsome *conduct.* Such instances may be very significant; their number can be controlled by the trial court's discretion; and the prohibitory considerations applicable to an accused's character * * * have here little or no force." I Wigmore, Evidence §198 (3d ed. 1940).

In any event, whatever auxiliary policy considerations have persuaded most courts in this country to exclude proof of character by specific acts when offered by evidence of extrinsic testimony of third parties, these considerations should not bar the cross-examination of the witness as to relevant specific acts of misconduct. As Wigmore argues: "(a) there is no danger of confusion of issues, because the matter stops with question and answer; (b) there is no danger of unfair surprise, because the impeached witness is not obliged to be ready with other witnesses to answer the extrinsic testimony of the opponent * * *." (3A Wigmore, Evidence §981 (Chadbourn rev. 1970).) However, Albrecht was not asked on cross-examination about any specific act of misconduct.

■■ Nonetheless, the law in Illinois has long been settled that proof of a violent temper and disposition can only be made through evidence of the witness' reputation for that particular character trait (*People v. Willy,* 301 Ill. 307, 133 N.E. 859 (1922); *People v. Popovich,* 295 Ill. 491, 129 N.E. 161 (1920); *People v. Allen,* 35 Ill. App. 3d 342, 341 N.E.2d 431 (5th Dist. 1976); *People v. Peeler,* 12 Ill. App. 3d 940, 299 N.E.2d 382 (1st Dist. 1973); *People v. Dixon,* 10 Ill. App. 3d 1038, 295 N.E.2d 556 (1st Dist. 1973)), and we feel that if this rule is to be abolished it must be done by the supreme court. Accordingly, we hold that the trial court did not err in excluding the evidence of Officer Albrecht's prior acts of violence.

Defendant's final contention is that the trial court erred in excluding Officer Albrecht's testimony concerning his suspension from the police force because it reasonably tended to show that Albrecht, in testifying against defendant, may have been influenced by interest, bias or a motive to testify falsely.

The State, citing *People v. George*, 49 Ill. 2d 372, 274 N.E.2d 26 (1971) and *People v. Hanks*, 17 Ill. App. 3d 633, 307 N.E.2d 638 (4th Dist. 1974), argues that only a witness' arrests, indictments or convictions may be used to undermine the credibility of his testimony because of bias. We feel that this position is overly restrictive, however, as "[t]he range of external circumstances from which probable bias may be inferred is infinite." (3A Wigmore, Evidence §949 (Chadbourn rev. 1970).) Moreover, neither of the cases cited by the State supports such a sweeping generalization. In *People v. George*, the supreme court merely repeated the general rule that the scope of cross-examination is controlled by the trial court's discretion and held that under the circumstances presented there the trial court did not abuse its discretion in refusing to allow cross-examination of a witness as to whether he had ever been the subject of a burglary investigation. In *People v. Hanks*, the court held that it was improper to allow cross-examination of a witness concerning previous acts of misconduct which had not come to the attention of law enforcement officials.

At the time of defendant's trial in the case at bar, Officer Albrecht was suspended from the police force for committing an act of violence and was scheduled for reinstatement only a few days later. Under these circumstances, we feel that defendant should have been allowed to bring out and explore the possibility that Albrecht's testimony may have been influenced by a desire to return to active duty without further trouble and to avoid continued suspension or other disciplinary measures.

■■ Although the trial court improperly restricted the cross-examination of Officer Albrecht, we feel that this error was harmless beyond a reasonable doubt. If Albrecht did fabricate the story that defendant attacked and struck him, he must have done so at some time before the charges against defendant were filed. Therefore, Albrecht's suspension several months later probably had little, if any, effect upon his trial testimony. In addition, Officer Ronald Smith's testimony, corroborated in several respects by Officers Clayton and Lovell, would have been sufficient by itself to sustain defendant's conviction.

For the reasons stated above, the decision of the Circuit Court of Madison County is affirmed.

Affirmed.

CARTER and JONES, JJ., concur.