985 F.2d 563
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Mariano RODRIGUEZ, Petitioner-Appellant,
v.
Richard B. GRAMLEY, Warden, Dixon Correctional Center and
Rolland W. Burris, Attorney General of Illinois
Respondents-Appellees.
 No. 91-2764.
 United States Court of Appeals, Seventh Circuit.
 Submitted Jan. 12, 1993.*
Decided Feb. 10, 1993.
 
 Appeal from the United States District Court for the Northern District of Illinois, Western Division, No. 90 C 20246; Stanley J. Roszkowski, Judge.
 
 ORDER
 
 1
 Mariano Rodriguez filed a petition for habeas corpus, 28 U.S.C. § 2254, claiming that he was denied due process of law because the prosecution failed to prove him guilty of murder beyond a reasonable doubt and because the trial court judge improperly excluded evidence that Rodriguez contends would support his claim of self-defense. In addition, Rodriguez argued that he was denied effective assistance of counsel both at trial and on appeal. He now appeals pro se from the district court's denial of the petition, which we affirm.
 
 I.
 
 2
 Rodriguez does not dispute that he shot and killed Gaudencia Galindo on January 18, 1981. He admitted as much to police as they arrived at the scene of the crime, telling them that Galindo had violated the Rodriguez family honor, had it coming to him, did not deserve to live, and that he, Rodriguez, would do it the same way again if he had to. A bench trial led to Rodgriguez's conviction and a thirty-two-year jail sentence. Forensic evidence showed that three bullets travelled from the back of the victim's body to the front. At least two wounds to the head were inflicted at close range.
 
 
 3
 An eyewitness testified that he and Galindo were fixing a car on the street when Rodriguez approached, announcing to the victim, "Here I'm coming after you, you son of a bitch." Rodriguez fired his gun but missed. As Galindo fled, Rodriguez fired again. Galindo staggered and fell to the street, face down, grasping in each hand screwdrivers that he had been using to repair the car's ignition points. Rodriguez shot Galindo, lying prostrate on the street, two more times.
 
 
 4
 A second witness for the prosecution testified that while in her home, across the street from the Rodriguez residence, she heard what sounded like three gunshots. When she ran outside, she saw Rodriguez approach Galindo and shoot him twice as he was expiring on the pavement. After calling the police from her home, she and her husband walked over to assist Galindo. In a mixture of Spanish and English, Rodriguez told them that they should get away or get the same.
 
 
 5
 Rodriguez took the stand and offered a different version of events. He told the court that he had retrieved a loaded gun from under his mattress after he saw Galindo in an alleyway beside his home. When Rodriguez went outside and reached a five-foot-tall alley door, Galindo approached, threatened him, and reached over the divider, clutching something in his hand--whether a knife, an ice pick, or a dagger Rodriguez was not sure. In fear of his life, he fired five times in rapid succession as Galindo attempted to flee. Rodriguez testified that he did not approach Galindo as he collapsed on the street. A tenant and neighbor substantially supported Rodriguez's testimony.
 
 
 6
 Rodriguez appealed to the Illinois Appellate Court, First District, which affirmed the conviction and sentence. The Supreme Court of Illinois denied leave to appeal. The United States District Court for the Northern District of Illinois dismissed an initial petition for habeas corpus relief, finding that Rodriguez had failed to exhaust state court remedies. Proceeding pro se, he then sought postconviction relief, which the Illinois courts rejected. On Rodriguez's second attempt at habeas corpus, the district court denied the petition. Here he appeals from that decision, raising substantially the same arguments advanced before the district court.
 
 
 7
 He claims that he is entitled to habeas corpus relief on four grounds: (1) that due to the trial court's erroneous exclusion of evidence relating to his state of mind, the state failed to prove him guilty of murder beyond a reasonable doubt; (2) that the trial court improperly excluded evidence that would have corroborated Rodriguez's testimony that he feared Galindo on prior occasions; (3) that Rodriguez was denied a fair trial when the court excluded evidence of the victim's prior violent attacks on other persons; and (4) that he was denied effective assistance of counsel both at trial and on appeal.[1]
 
 II.
 
 8
 A federal court is limited in a habeas review to deciding whether a conviction violates the Constitution laws, or treaties of the United States. 28 U.S.C. § 2254(a); Estelle v. McGuire, 112 S.Ct. 475, 480 (1991); Bates v. McCaughtry, 934 F.2d 99 (7th Cir.), cert. denied, 112 S.Ct. 318 (1991). Crying "Constitution", however, does not automatically mean that state court judgments warrant collateral review. Brecht v. Abrahamson, 944 F.2d 1363, 1372 (7th Cir.1991), cert. granted, 112 S.Ct. 2937 (1992). "One who seeks that review must justify the federal role." Id.
 
 
 9
 Rodriguez challenges the sufficiency of the evidence supporting his murder conviction and claims that the trial court erroneously excluded evidence of self-defense. These two grounds really are one, though--that the exclusion of certain evidence and testimony, which Rodriguez claims impeded his ability to prove he acted in self-defense, prevented the prosecution from establishing his guilt beyond a reasonable doubt.
 
 
 10
 Jackson v. Virginia, 443 U.S. 307 (1979), requiring federal courts to ensure that the state present enough evidence to allow a reasonable trier of fact to find guilt beyond a reasonable doubt, brings the sufficiency issue into the ambit of habeas review. Errors concerning the admission or exclusion of evidence at trial--which, of course, can bear on the sufficiency of evidence--will cause the writ to issue if a specific constitutional guarantee has been violated, the defendant has been denied fundamental fairness, United States ex rel. Palmer v. De Robertis, 738 F.2d 168, 170 (7th Cir.), cert. denied, 469 U.S. 924 (1984), or "the trial as a whole is so infected that the verdict is no longer reliable." Brecht, 944 F.2d at 1366 (citing Cupp v. Naughten, 414 U.S. 141 (1973); Lisenba v. California, 314 U.S. 219 (1941)). In our review we must view the evidence in a light most favorable to the prosecution. Jackson, 443 U.S. at 307; Garlington v. O'Leary, 879 F.2d 277, 285 (7th Cir.1989).
 
 A. Exclusion of state of mind evidence
 
 11
 Rodriguez contends that the court violated his constitutional rights by keeping out evidence of his state of mind. We bear in mind that while it is not our role "to second-guess every evidentiary ruling made at the petitioner's trial, at some point an isolated evidentiary ruling might so hamper his defense that it could no longer be said that he had had a fair trial, and then we would have to intervene." Carbajol v. Fairman, 700 F.2d 397, 401 (7th Cir.1983). None of the evidentiary rulings we are about to discuss, however, resulted in a fundamentally unfair trial of constitutional magnitude.
 
 
 12
 First, Rodriguez argues that he was not allowed to testify that he feared for his life. The record suggests otherwise. Transcript of Illinois v. Rodriguez, No. 81 C 622 (May 24, 1982) (hereinafter Tr.) at 223, 227. When defense counsel asked Rodriguez why he feared for his life and safety, the court sustained the state's objection to Rodriguez's answer--"The man was a very dangerous one", Tr. at 227--but not to the question. Defense counsel did not repeat the question. Illinois case law permits the admission of evidence offered to demonstrate a homicide victim's violent character only if the defendant already has offered some evidence to support his claim of self-defense. People v. Olson, 377 N.E.2d 371, 377 (Ill.App.Ct.1978). When defense counsel asked Rodriguez why he feared for his life, Rodriguez already had testified that Galindo had tried to lunge at him from across the fence. Even if the trial court's exclusion of Rodriguez's answer was erroneous, it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 22 (1967). In any event, Rodriguez's testimony conveys a fear for his life, even absent observations about Galindo's character.
 
 
 13
 Rodriguez also argues that the court improperly excluded his testimony that he felt fear the evening prior to the shooting after he received a threatening phone call from Galindo. The appellate court found the trial court's ruling proper: "Relevant to the defendant's self-defense argument is what he felt at the time of the shooting, not what he felt 12 hours earlier." Illinois v. Rodriguez, No. 82-1671 (Ill.App.Ct. Feb. 3, 1984), at 5-6, R. at 15.[2] The appellate court provided no citation for this proposition, but one case we found holds that when the accused claims self-defense, and threats of the victim were known to him, the threats are admissible to prove the defendant's apprehension of danger and its reasonableness. People v. Ganci, 372 N.E.2d 1077, 1083 (Ill.App.Ct.1978). What Rodriguez felt the night before the shooting might have been relevant to his self-defense claim. Be that as it may, the trial court allowed Rodriguez to repeat the alleged threat Galindo made over the phone--" 'Listen. Listen. This is Galindo. Dead Tomorrow' ", Tr. at 248. Even though the court struck Rodriguez's testimony about what he felt, it permitted him to testify as to the substance of the threat.
 
 
 14
 Next, Rodriguez challenges the court's exclusion of his testimony that Galindo once bragged that he had killed a man in Mexico and had persuaded a friend to take the rap. The appellate court found that the trial court properly excluded these statements because they were so vague as to prevent cross-examination or refutation. Rodriguez, supra, at 6; R. at 15. Moreover, the appellate court found that the prejudicial effect of the testimony greatly outweighed its probative value. Id.
 
 
 15
 The trial court also violated his constitutional rights, says Rodriguez, by omitting his testimony that Galindo had threatened him on several earlier occasions. But the record in fact shows that the trial court allowed Rodriguez to testify about two incidents in 1980 in which Galindo pointed a gun in his direction. Tr. 274, 277.
 
 
 16
 B. Exclusion of corroborative evidence and evidence of Galindo's prior violence
 
 
 17
 Petitioner also believes that the trial court improperly excluded evidence that would have corroborated his testimony that he feared the deceased on previous occasions. The trial court allowed the parties to stipulate that two witnesses would testify to Galindo's good reputation for peacefulness, and that two would testify to just the opposite. Nevertheless, the appellate court found that the trial court correctly determined that Rodriguez could not present evidence of specific acts of violence because it was not evidence of general reputation and because the evidence was not known to Rodriguez at the time of the shooting. In reaching this conclusion, the appellate court cited what it described as the majority rule in Illinois:
 
 
 18
 "The accused in a homicide case, after offering some evidence that he acted in self defense, is entitled to prove that the deceased was reputed to be a violent and dangerous man. If this reputation was known to the accused, the knowledge is a factor to be considered in determining whether he reasonably apprehended bodily harm. People v. Gibson, 385 Ill. 371, 52 N.E.2d 1008 (1944). Regardless, however, whether the accused knew of the reputation, it is admissible for the purpose of showing the character of the deceased, with the suggested inference [sic] that the latter was more probably the aggressor. People v. Brindley, 369 Ill. 486, 17 N.E.2d 218 (1938). (E. Clearly and M. Graham, Handbook of Illinois Evidence § 404.4 at 133 (3rd ed.).)"
 
 
 19
 Rodriguez, supra, at 7; R. at 15. Rodriguez offered his evidence, according to the appellate court, under what his lawyer recognized to be the minority view in Illinois, which permits the introduction of specific acts of violence by the victim on prior occasions.
 
 
 20
 In our own review of Illinois law, however, we have found that evidence of a victim's specific acts of violence and threats are inadmissible unless the accused lays the proper foundation. " '[I]n the absence of preliminary evidence of self-defense'--that is, evidence 'that would justify a finding that deceased was the aggressor' in the incident that resulted in his death--'specific acts of violence and threats made by the victim should not be admitted.' People v. Carbajol, supra, 67 Ill.App.3d at 241, 23 Ill.Dec. at 921, 384 N.E.2d at 828." Carbajol, supra, 700 F.2d at 400.
 
 
 21
 We found in Carbajol that the habeas petitioner could not introduce evidence of an alleged rape and murders committed years earlier in Mexico by a man he was found guilty of having murdered. Carbajol could not plead self-defense--acting, under Illinois law, "to defend himself ... against such other's imminent use of unlawful force", ILL.REV.STAT. ch. 38, § 7-1--because the murder victim never attacked him. Id. at 400. We upheld the district court's denial of a writ of habeas corpus "because there is no indication that Illinois courts would ever admit evidence of the victim's past violent acts ... unless, as in People v. Foster, 81 Ill.App.3d 915, 923, 37 Ill.Dec. 128, 134, 401 N.E.2d 1221, 1227 (1980), the victim had made a gesture signaling an imminent attack on the defendant." Id. at 401.
 
 
 22
 Rodriguez's version of events suggested that Galindo had made a threatening gesture at the alley door. Under Carbajol and the Illinois case law cited therein, this testimony might be enough of a foundation to permit the introduction of evidence relating to Galindo's prior violent acts. But even if the trial court erred by excluding this evidence, we do not find that the ruling resulted in either an unfair trial or a constitutional infirmity. "Errors in admitting or excluding evidence do not violate the Constitution unless the trial as a whole is so infected that the verdict is no longer reliable." Brecht, supra, 944 F.2d at 1366 (citations omitted).
 
 
 23
 Based on the entire record, the trial court reasonably could have found Rodriguez guilty of murder. The court heard his evidence of self-defense and found a number of inconsistencies in the defense testimony. Eyewitnesses testified that Rodriguez was the aggressor, contradicting his assertion that Galindo used force first. Even if the court had accepted Rodriguez's interpretation of events, his own testimony failed to show the danger of imminent harm. On the witness stand he stated that Galindo had made a threatening gesture at him from the other side of a five-foot alley door with something--Rodriguez could not tell what it was--in his hands. Since a fence separated the two men, the trial court reasonably could have found that Rodriguez was not in any danger of imminent harm. Moreover, Rodriguez admitted that he shot the gun five times without stopping--force greater in kind and amount than that necessary to stave off any danger posed by a man, holding a knife, dagger, or ice pick, and standing on the other side of a five-foot fence. Galindo's wounds indicate that Rodriguez shot him from behind, at close range, supporting eyewitness accounts that Galindo was on the street, not by the fence, when Rodriguez started shooting. No legal justification supports such a killing. Accordingly, the trial court could have determined that he was guilty of murder beyond a reasonable doubt.
 
 
 24
 For the foregoing reasons, we find that the district court properly rejected Rodriguez's sufficiency of the evidence claim. The denial of the writ is
 
 
 25
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 Rodriguez waived his ineffective assistance claim in the district court by failing either to explain the issue in his petition or to address it in his memorandum of law in support of the petition. United States ex rel. Rodriguez v. Gramley, et al., No. 90 C 20246 (N.D.Ill. June 27, 1991), at 5 n. 1; R. 5. In this appeal he explicitly states that he has abandoned the ineffective assistance issue. Appellant's Brief, filed Nov. 20, 1991, at 13 n. 1
 
 
 [2]
 The appellate court also noted that Rodriguez's testimony regarding the phone call was questionable given testimony by his wife and daughter that there was no phone in the home at the time of the alleged call